## UNITED  STATES  DISTRICT  COURT
## EASTERN DISTRICT OF LOUISIANA

WESLEY DICK #208490                                    CIVIL ACTION

VERSUS                                                          NO.  05-1467

BURL CAIN, WARDEN                                    SECTION: N/6


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing, if necessary, and to submit proposed findings and recommendations pursuant

to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and, as applicable, **Rule 8(b) of the Rules Governing**

**Section 2254 Cases.**  Upon review of the entire record, the Court has determined that this matter

can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  For the reasons set

forth below, it is recommended that the instant petition be DENIED WITH PREJUDICE.

I. **Factual Background**

Petitioner filed this petition for a writ of habeas corpus challenging the constitutionality of

his confinement pursuant to 28 U.S.C. § 2254.  He is presently incarcerated at Angola State

Penitentiary serving a life sentence without benefit of probation, parole or suspension of sentence.

The record before the Court consists of Volume I from the 22nd Judicial District Court, Parish of St.

Tammany; Volumes II-IV from the Louisiana First Circuit Court of Appeal; and Volume V from

the Louisiana Supreme Court.

The following facts were set forth by the Louisiana First Circuit Court of Appeal, State v.

Dick, 812 So.2d 152, (TABLE), 2002 WL 451556, 2001-0837 (La. App. 1 Cir., 2/15/02)  at p.5, and

quoted by petitioner in his habeas petition at pp. 3-5:

At trial, the defendant admitted he distributed heroin on May 7, 1999 and May 11, 1999 (instant offense), and distributed dilaudid on June 9, 1999. He claimed, however, that he sold the drugs only in response to relentless requests from a confidential informant (CI). According to the defendant, the CI repeatedly telephoned his home, leaving messages for him to return his call, and that he (the CI) had a job for the defendant. The defendant also testified that when he finally spoke with the CI and was asked to get some heroin, he informed the CI that he was in the process of rehabilitating himself, was seeking treatment from a methadone clinic and was trying to have nothing to do with drugs. Nevertheless, the requests persisted, and the defendant relented.

Slidell Police Department Detective Swann identified the defendant in court as the person who sold him heroin in May, 1999. Detective Swann conceded he was introduced to the defendant by a CI.

On May 7, 1999, Detective Swann met with the defendant at an Exxon service station on Airport Road and arranged for the defendant to drive to New Orleans and get some heroin. When the defendant returned, Detective Swann purchased five packs of black tar heroin from him. The defendant asked for and received, the cost of the heroin ($120.00), plus $30.00, and an additional $20.00 for gas.

The State introduced State Exhibit #8, an audiotape of the May 7, 1999 drug transaction, into evidence. Thereon, the exchange of the drugs for the money can be heard. Further, in response to Detective Swann's questions concerning "hooking up" again and whether "every time was like this" or whether the defendant ever "had anything on [him]," the defendant stated, "I haven't been doing nothing really.... I don't hardly mess with nobody - like two or three people. I do this for friends."

On May 11, 1999, pursuant to an earlier telephone conversation, the defendant met Detective Swann at the Airport Road Exxon again, and sold him ten packets of China white heroin. The sale took place after Detective Swann provided the defendant with $240.00 and the defendant stated it would take him between an hour and an hour and one-half to go to "the city," pick up the heroin, and return. After the drug deal, Detective Swann asked the defendant if he (Detective Swann) could "Get some more white?[,]" and the defendant answered affirmatively. The defendant also advised Detective Swann of the price of a bundle (twenty-five packs) of heroin. The record also reveals that on June 6, 1999, the defendant sold five Dilaudid pills to Detective Swann.

The defendant testified at trial. He claimed the CI kept calling him during the spring of 1999, "all the time asking [the defendant] to go get him drugs." The defendant initially refused, telling the CI he (the defendant) was attending a rehabilitation clinic, did not want to do drugs, was trying to get his life "straight,"

-2-

and loved his wife and children and did not want to lose them.  The defendant indicated, however, because the CI aggravated him, he ultimately did obtain drugs for the CI and then for the CI and Detective Swann.

On rebuttal, the State called St. Tammany Parish Narcotics Task Force Detective William Hart.  Detective Hart indicated the defendant was suspected of being a heroin and Dilauded dealer in connection with a Dilaudid distribution case against T.L. Jenkins a few years earlier.

## II. <u>Procedural Background</u>

Petitioner was charged by a bill of information with two counts of distribution of heroin, in violation of La.R.S. 40:966(A)(1).  Count I was charged to have been committed on May 11, 1999, and count II was charged to have been committed on May 7, 1999.  Petitioner pled not guilty on both counts. Prior to trial, the State nolle prosequied count II.  On October 12, 2000, after a two day trial by jury, Petitioner was convicted on count I of distribution of heroin.  Case No. 309046, Sec. "C", 22nd Judicial District Court, Parish of St. Tammany. See Vol. 2, p. 76.  He was represented at trial by Davidson S. Ehle, III, Esq.

On January 8, 2001, Petitioner was sentenced to life imprisonment at hard labor.  At sentencing, and on appeal, he was represented by Doyle Spell, Jr., Esq.  See Vol. 2, p. 77.  Petitioner timely appealed his sentence.  His appeal challenged (1) the sufficiency of the evidence, (2) the "excessive" sentence, and (3) the ineffective assistance of counsel.  On February 15, 2002, his appeal was denied by the First Circuit Court of Appeal.  <u>State v. Dick</u>, 812 So.2d. 152. See Vol. 1[1].  The Louisiana Supreme Court denied Dick's request for review on November 8, 2002, <u>State v. Dick</u>, 828 So.2d 1109 (La. 11/8/02) (No. 2002-K-0795).

On July 31, 2003, petitioner filed a motion to correct an illegal sentence pursuant to

---

[1]The pages of Volume 1 of the State Court record are not sequentially numbered.  The pages of Volumes 2 through 5 are sequentially numbered, allowing for specific citation.

La.C.Cr.P. art. 882, in the 22nd Judicial District Court.  The motion was originally set for hearing on September 25, 2003, but the hearing date was continued until January 8, 2004.  The Court can find no record that a hearing was held.  On November 13, 2003, Petitioner filed an application for post conviction relief in the trial court, Docket No. 309-046, Div. "C".  Vol. 1.  The 1st, 2nd, 4th, and 5th claims alleged ineffective assistance of counsel, and the 3rd claim alleged a due process violation.  The application was denied without a hearing on December 5, 2003.  Id.  On December 19, 2003, petitioner filed an application for supervisory writs at the First Circuit Court of Appeal, which was denied on March 22, 2004, under Case No. 2003-KW-2897.  Id.  In April, 2004, petitioner applied for supervisory writs at the Louisiana Supreme Court.  The application was denied on April 1, 2005, under Case No. 2004-KH-1181.  State ex rel. Dick v. State, 897 So.2d 591 (La. 4/1/05).  Petitioner filed this federal habeas petition on April 12, 2005.

### III.  AEDPA Statute of Limitations

A petitioner is generally required to bring a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 within one year of the date the conviction is final.  28 U.S.C. § 2244(D)(1)(a), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  That limitation applies to this petitioner because his petition was filed after the AEDPA became final on April 24, 1996.  Lindh v. Murphy, 117 S.Ct. 2056, 2060 (1997).  The one year limitation is tolled during the periods that a properly filed petition for post-conviction relief or collateral review is pending in state courts.  28 U.S.C. § 2244(D)(2); Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998). An application ceases to be "pending" when further appellate review becomes unavailable.  Melancon v. Kaylo, 259 F.3d 401, 407 (5th Cir. 2001).

In Louisiana, the finality of a judgment on appeal is determined by La.C.Cr.P. art. 922 as

follows: (a) within fourteen days of rendering of a judgment by any appellate court or the Supreme Court, a party may apply for a re-hearing; (b) a judgment becomes final when the delay for application of a re-hearing has expired without an application having been made; (c) when a timely filed application for re-hearing has been made, a judgment becomes final when the application is denied; (d) if an application for a writ of review is timely filed with the Supreme Court, the appellate court judgment becomes final when the Supreme Court denies the writ application.  A conviction that has become final pursuant to La.C.Cr.P. art. 922 is considered final for purposes of 28 U.S.C. § 2254 when the time expires for a defendant to seek certiorari at the United States Supreme Court, ninety days after the decision of the Louisiana Supreme Court if final.  <u>Johnson v. Cain</u>, 2000 WL 14688, *1 (E.D.La. 2000), *citing* <u>Ott v. Johnson</u>, 192 F.3d 510, 511 (5th Cir. 1999).

The 1st Circuit Court of Appeal affirmed petitioner's conviction on direct appeal, and on November 12, 2002, the Louisiana Supreme Court denied writs on appeal.  His conviction became "final" ninety days later, on February 12, 2003, when the time for him to apply to the U.S. Supreme Court for *certiorari* expired.  Petitioner then had one year, 365 days, from February 12, 2003, to file a timely habeas petition, allowing for tolling of the time limitation while a properly filed petition for post-conviction relief or collateral review was pending in state courts.

Petitioner filed an application for post-conviction relief on October 30, 2003, **260** days after his conviction became final.  The trial court denied the application on December 5, 2003.  Fourteen days later, on December 19, 2003, he timely applied for supervisory writs at the state appellate court.  Petitioner's application was denied on March 22, 2004.  On April 8, 2004, nine days later, he timely applied to the Louisiana Supreme Court for a *writ of certiorari*.  His application was denied on April 1, 2005, and he filed his federal habeas application on April 12, 2005, eleven days later.  Because

only **271** days (260 + 11 days)  had elapsed since his conviction became final, his federal habeas

application is timely.

## IV.  Exhaustion

According to 28 U.S.C. § 2254(b)(1)(A), an applicant for federal habeas corpus relief must

have exhausted the available state remedies.  A federal habeas petition must be dismissed if any

issue raised has not been exhausted in state courts.  28 U.S.C. § 2254(b), (c); Rose v. Lundy, 102

S.Ct. 1198 (19820; Thomas v. Collins, 919 F.2d 333,334 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2862

(1991).  For a claim to be exhausted, it must have been presented to the highest state court in a

procedurally proper manner.  Rose v. Lundy, *supra*, 102 S.Ct. at 1202; Dupuy v. Butler, 837 F.2d

699, 702 (5th Cir. 1988), *citing* Carter v. Estelle, 677 F.2d 427, 442 n.10 (5th Cir. 1982) (citations

omitted).

Petitioner's first three claims were considered by the state appellate and Supreme Court in

his direct appeal.  Claims four through eight were raised in his application for post-conviction relief

and considered by the trial court and state appellate and Supreme Courts.  Petitioner has exhausted

all his of his federal habeas claims in state courts.

## V. Standard of Review

In Williams v. Taylor, 120 S.Ct 1495, 1523 (2000), the United States Supreme Court

articulated the appropriate standard of review for federal habeas petitions pursuant to the AEDPA

as follows:

> Under 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied - the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law,
> as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established
> Federal law as determined by the Supreme Court of the United

States."  Under the "contrary to" clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court decides
a case differently than this court has on a set of materially
indistinguishable facts.  Under the "unreasonable application" clause,
a federal habeas court may grant the writ if the state court identifies
the correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 120 S.Ct. at 1523.   The AEDPA further codified the "presumption of correctness" that

attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a

petitioner who attempts to overcome that presumption.   28 U.S.C. § 2254(e)(2); <u>Drinkard v.

Johnson</u>, 97 F.3d 751, 767 (5th Cir. 1996), *cert. denied*,  117 S.Ct. 1114 (1997), *overruled in part of

other grounds*, <u>Lindh v. Murphy</u>, 117 S.Ct. 2059 (1997); <u>Carter v. Johnson</u>, 110 F.3d 1098, 1103

(5th Cir. 1997).

**VI. <u>Analysis</u>**

<u>**The Evidence**</u>

At trial, Detectives Kevin Swann and Chris Bell testified for the State; the defendant, Wesley

Dick, III, and his father, Wesley Dick, II, testified for the defense.  Detective William Hart was

called by the State on rebuttal.  Detective Swann began his testimony with his explanation of a

micro-cassette recording, played for the jury, of a telephone conversation between Mr. Dick and

Detective Swann, dated May 11, 1999, in which the parties refer to a prior drug transaction.  Vol.

4 pp. 301-02, State Ex. 1.  Detective Swann explained to the jury that on May 7, 1999, he had

purchased five packs of black tar heroin from Mr. Dick and paid him, in addition to the cost of the

heroin, $30.00 plus $20.00 for gas.  <u>Id</u>. p. 303.  The detective then described a video tape (without

audio), also shown to the jury, of the heroin deal on 5/11/99, when he met with Mr. Dick at 3:30

p.m. at the Exxon Station on Airport Road in Slidell to pay for the heroin.  At that time Mr. Dick's

two young daughters were in the back of his car.  Mr. Dick then drove to New Orleans with his

daughters in the car to purchase ten foils of white heroin for Detective Swann.  Id. p. 304-05; State

Ex. 2.  The video included, with audio, the meeting at the same location later the same day at which

Mr. Dick gave the 10 foils of china white heroin to the detective.  Mr. Dick's daughters were still

in the car.  Detective Swann testified in detail regarding the taped conversation between himself and

Mr. Dick, which included discussion of possible future transactions and the price of the heroin.  Id.

pp. 311-13.  The State introduced and showed to the jury an evidence bag containing china white

heroin and one containing the black tar heroin involved in the May 11th and May 7th drug

transactions.  Id. p. 314-15, State Ex. 3 and 4.  The State then introduced, and Detective Swann

reviewed for the jury, the investigative police report prepared in the case, dated 7/6/99.  Id. pp. 316-

17, State Ex. 5.  Finally, Detective Swann described for the jury a third drug transaction with Mr.

Dick, involving the purchase of dilaudid pills, which the detective explained were synthetic or

pharmaceutical heroin.  Id., p. 317-18, State Ex. 6.  When he testified, Mr. Dick did not deny that

these transactions took place.  Additional evidence presented at trial included a "pipe" with cocaine

residue and a black handled knife, both found on Mr. Dick at the time of his arrest several days after

the last drug transaction, and a Choices of Louisiana Clinic ID card for Wesley Dick.  Vol. 2 p. 12.


## Claim 1

### The life sentence imposed upon petitioner violates the Eighth Amendment of the United States Constitution as it is excessive and cruel and unusual.

Petitioner asserts that, under the particular facts of this case, the legislatively mandated

sentence of life in prison without benefit of probation or suspension of sentence violates Article 1,

Sec. 20 of the Louisiana Constitution as well as the Eighth Amendment of the United States

Constitution because it is excessive.  He cites Henderson v. Norris, 258 F.3d 706 (8th Cir. 2001), in support.

He asserts that a sentence violates Louisiana Constitution art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense and is nothing more than a purposeless and needless infliction of pain and suffering, citing State v. LoBato, 603 So.2d 739 (La.  1992)and State v. Bradford, 691 So.2d 864 (La. App. 2 Cir. 1997), *citing* State v. Bonnano, 384 So. 2d 355 (La. 1980) and State v. Green, 587 So.2d 18 (La. App. 2 Cir. 1991), *writ denied*, 604 So.2d 993 (La. 1992).  He further argues that even a sentence falling within the statutory parameters may violate the constitutional prohibition if not justified by the circumstances surrounding the offense and/or the character and propensities of he offender.  *See* State v. Radcliff, 416 So.2d 528 (La. 1982); State v. Robicheaux, 412 So.2d 1313 (La. 1982).

Mr. Dick argues that the State failed to show that he was an active drug dealer or that he posed a threat to society, therefore the State has no vital interest in his permanent incarceration.  He further argues that the record shows that he did not have a pre-existing propensity to traffic heroin, and he would never have engaged in the distribution of heroin without the provocation of law enforcement and the CI.

The State argues that "[a]lthough wide discretion is accorded a state district judge's sentencing decision and claims arising out of that decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law." Haynes v. Butler, 852 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667 (1988).  Even when a sentence is within statutory limits, it may still be unconstitutional if it is grossly

disproportionate to the crime or resulted from a "sentencing decision ... wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion,'... or that an error of law resulted in the improper exercise or the sentencer's discretion and thereby deprived the petitioner of his liberty.'" Hines v. State, 102 F.Supp.2d 690, 698 (E.D.La. 2000), *quoting* Haynes, 825 F.2d at 924. In Louisiana, if a trial judge determines that the defendant's punishment makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the judge is bound to reduce the sentence. *See* State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993).

The Dorthey Court expressly recognized that "the determination and definition of acts which are punishable as crimes is purely a legislative function.  It is the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional." Dorthey, 623 So.2d at 1278; State v. Baxley, 656 So.2d 973, 979-80 (La. 1995).  In State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, upon reexamination of when Dorthey permits a downward departure from the mandatory minimum sentences in the habitual offender law, the Court held that to rebut the presumption that the mandatory minimum sentence was constitutional, a defendant must "clearly and convincingly" show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

Johnson, 709 So.2d at 676.  The principles relied on in Dorthey apply to a case such as this one in

which the habitual offender statute has no application.  <u>State v. Davis</u>, 666 So.2d 400, 408 (La. App. 1 Cir. 12/15/95), *writ denied*, 671 So.2d 925 (La. 1996).

"The Court in <u>Baxley</u> indicated that the factors outlined in <u>State v. Telsee</u>, 425 So.2d 1251, 1253-54 (La. 1983), are useful in determining whether or not a sentence, by its excessive length or severity, is grossly out of proportion with the underlying crime[,]" including "the nature of the offense and the offender, a comparison of the punishment with sentences imposed for similar crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions." <u>Id.</u>, *citing* <u>Baxley</u>, 656 So.2d at 980.  Of these factors, the last two are more useful when a defendant claims that the punishment mandated by the statute is unconstitutionally excessive.  <u>Id.</u>, *citing* <u>Telsee</u>, 425 So.2d at 1254.  The <u>Davis</u> court, citing <u>Harmelin v. Michigan</u>, 111 S.Ct. 2680 (1991) and <u>Solem v. Helm</u>, 103 S.Ct. 3001 (1983), noted that the proportionality review conducted under the Eighth Amendment to the United States Constitution does not consider the nature of the offender. <u>Id.</u>, at n.3.

La.R.S. 40:966, pursuant to which Mr. Dick was sentenced, prior to its amendment by 2001 La. Acts No. 403, § 4, provided in pertinent part:

**B. Penalties for violation of Subsection A.**  Any  person who violates Subsection A with respect to:

(1)  A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk "*"), upon conviction shall be sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence, and may, in addition, be required to pay a fine of not more that fifty thousand dollars.

Mr. Dick argues that 2001 La. Acts No. 403, § 4, changed the penalty for this offense to imprisonment for not less than five or more that fifty years at hard labor, at least five of which shall be served without benefit of probation or suspension of sentence, and a possible fine of up to

$50,000.  The effective date of Act 403 is June 15, 2001.  Section 6 of Act 403 provides "[t]he provisions of this Act shall only have prospective effect."  Dick committed the offense in May of 1999, and he was sentenced on January 8, 2001, subject to the penalty applicable at the time he committed the offense.

The pre-sentence investigation report (PSI) ordered by the trial court is not in the record, but the transcript of the Sentencing Hearing is.  After listening to testimony from the defendant and his father, and argument of counsel, the trial judge stated as follows:

> .... I have considered the presentence investigation.  Of course, I was present during the trial.  .... I have also considered the letter attached to that by Mr. Dick.
>
> In addition, I have considered all of the documents filed by Mr. Spell including his memoranda, the pictures of Mr. Dick's wife and children, which have also been submitted and those will now be a part of the record.  I have, part of this employment history was included.
>
> The report, the presentence investigation shows me, as far as criminal history is concerned, that Mr. Dick has no juvenile record.  He had prior adult offences.  On May 9, 1986, he pled guilty in Jefferson Parish to possession of marijuana, was put on probation and fined.  On November the 17th, 1987, in Jefferson Parish, he was, had deferred disposition and two years probation on a charge of possession of Dilaudid.
>
> On April the 7th, 1988, in Fort Walton Beach, Florida, he was convicted of driving while intoxicated, was put on probation, fined, and his driver's license was suspended.  ....
>
> I know that you are a married man and you have two small children, a three-year-old and a six-year-old.  You also have supportive parents who are willing to help you in any way that they can.
>
> As far as your education is concerned, I learned through the presentence investigation that you have earned a GED, and that you have taken technical courses in relation to your field of work, which is inspection in different fields of construction.  I know there's concrete, and some of the stuff seemed to be related to the oil industry.
>
> You have an extensive work history in the field of industrial inspection.  And that history is attached to the presentence investigation and will be filed in to the record of these proceedings.
>
> I also understand that you are an admitted drug addict, that you have admitted to that addiction and you have taken steps to address that condition by voluntarily entering in to substance abuse clinics and that you were in a methadone treatment program at the time of you arrest for the crime for which you are being sentenced

today.

   In imposing this sentence, I have considered the provisions of article 894.1 of the Louisiana Code of Criminal Procedure, which sets out the aggravating and mitigating circumstances to be considered by a sentencing court.

   Under the aggravating circumstances, I find only one. And that is found at Article 894.1(b)(3), of the Louisiana Code of Criminal Procedure. And that is that you had been offered or had received anything of value for the commission of this crime.

   The undercover detective who had you do this gave you money. And that is something of value. So you were offered money, and you received money for the commission of the crime. It was the undercover policeman, or sheriff's deputy, who bought the heroin from you.

   Considering the mitigating circumstances, I find that under article 894.1(b) 24, 26, and 31, 24 is that you acted under strong provocation to commit this crime; 26 is that the victim of the defendant's criminal conduct induced or facilitated the commission of the crime, and the imprisonment of you will certainly entail excessive hardships on your dependents.

   .... After considering all of the above, the crime for which you were convicted requires that I impose the penalty mandated by statute, by the legislature of the State of Louisiana, Title 40, Section 966(a)(1)....

        ....

   I will note for you that while this statute says without benefit of probation or suspension of sentence, it does not say without benefit of parole. .... The prison sentence is mandatory.

Vol. 3, pp. 563-567.

   While it is difficult to reconcile Dick's sentence of life imprisonment under the statute that was effective at the time he committed his crime with the significantly lesser sentence mandated for the same crime under the current statute, this court is limited by the appropriate standard of review[2].

---

  [2]  On October 22, 2007, Mr. Dick filed a "Motion for Leave to Supplement Under FRCP Rule 15." Record document #15. His motion requests leave to "supplement his habeas brief." In his motion he chronicles the following recent events. In 2006, under Act 45, the Louisiana Legislature enacted La.Rev.Stat. 15:308, which made the provisions of 2001 La. Acts No. 403, § 4, retroactively applicable to his sentence. That statute reduced the penalty for his offense to imprisonment for not less than five or more than fifty years at hard labor, at least five of which shall be served without benefit of probation or suspension of sentence, and a possible fine of up to $50,000. Pursuant to the 2006 statute, Mr. Dick filed a motion in the state trial court pursuant to La.Rev.Stat. 15:308 to correct his "illegal sentence" and requesting retroactive application of the new sentencing provisions to his case. The trial court granted his motion, resentenced him to 10 years at hard labor and ordered that he be released from custody. The State applied for a writ to the First Circuit Court of Appeal, which granted the writ and reversed the trial court's ruling. Mr Dick applied to the Louisiana Supreme Court for writs. No. 06-KP-2223. On January 26, 2007, in State v. Dick, 951 So.2d 124, 2006-2223 (La. 1/26/07) that Court affirmed the First Circuit Court's ruling. Mr. Dick was

rearrested, his life sentence was reimposed and he was returned to the Louisiana State Penitentiary at Angola, Louisiana.

At ¶VII, Mr. Dick's motion alleges as follows:

> The Louisiana Supreme Court issued, in Mr. Dick's opinion, an erroneous ruling.  The Louisiana Supreme Court's ruling usurped the true meaning of the State Legislature; that the prior sentences for the enumerated crimes were too harsh and grossly out of proportion to the seriousness of the offenses and were nothing more than purposeless and needless infliction of pain and suffering.

He next asserts, at ¶VIII, that this supplemental complaint (construing his motion as a habeas claim) and the original habeas petition are related, and asks for an additional 30 days to perfect his supplemental claim.

This Court must first determine exactly what Mr. Dick's supplemental habeas claim is.  He generally references his original claim that his sentence is unconstitutional in that it violates the Eighth Amendment's proscription against cruel and unusual punishment because it is too harsh and nothing more than purposeless and needless infliction of pain and suffering.  However, his motion specifically addresses the Louisiana Supreme Court's ruling of January 26, 2007, that resulted in the reinstatement of his original sentence and his reincarceration pursuant to that sentence.

In State v. Dick (consolidated with State v. Smith, 2006-PK-2226, for consideration by the Louisiana Supreme Court) the Court considered whether La.Rev.Stat. 15:308, pertaining to ameliorating sentences as enacted by 2006 La. Acts No. 45, provides authority for the sentencing courts to modify defendants' sentences.  Dick, 951 So.2d at 125-126.  The statute provides, in pertinent part:

> B.  In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature *shall apply* to the class of persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: R.S. ... 40:966(B), ..., prior to June 15, 2001, provided that such application ameliorates the person's circumstances.
> C.  Such persons *shall be entitled* to apply to the Louisiana Risk Review panel pursuant to R.S. 15:574.22.

Id., 128 (emphasis supplied).  After careful review of the legislative history of the statute, the Louisiana Supreme Court held as follows:

> For the following reasons, we find that although in La. Rev. Stat. 15:308, the legislature mandates retroactive application of the more lenient penalty provisions to those person who committed crimes, who were convicted or who were sentenced according to La.Rev.Stat. 40:966B, the legislature did not provide that these offenders may seek resentencing in the courts, the judicial branch of government, because they are constitutionally required to seek relief in the executive branch.  Resentencing these offenders in order to retroactively apply the more lenient penalty provisions to offenders whose convictions and sentences are final is, in effect, a commutation of a valid and final sentence, which falls within the executive branch of government, not the judicial branch.  Therefore, La.Rev.Stat. 15:308C correctly provides the offenders' exclusive remedy is before the Louisiana Risk Review Panel, which falls within the executive branch of government.

Id., at 126 (Johnson, J., dissenting and assigning reasons).

-14-

The trial judge clearly considered Mr. Dick's background, situation, and mitigating and aggravating circumstances before sentencing him.  The state appellate court reviewed the sentencing judge's reasoning and found it sufficient.  It did not delve into the legislative purpose behind the punishment, although the mandated punishment for Mr. Dick's crime had already been substantially reduced by the legislature, or compare Mr. Dick's punishment with how he would have been punished for the same crime in other jurisdictions.  There is nothing in the record to explain why a mandatory sentence of life without benefit of probation or suspension of sentence was proportional to the severity of his crime, that is, made a "measurable contribution to acceptable goals of punishment" for the crime Dick committed in 1999, but not in 2001 when the appropriate penalty for that same crime was significantly less.

Mr. Dick asserts that he is in the same situation as the petitioner in Henderson v. Norris, 258 F.3d 706 (8th Cir. 2001).  There are a number of striking similarities, and some significant

---

The ruling of the Supreme Court did not foreclose Mr. Dick's opportunity to benefit from the ameliorative provisions of the statute, but merely directs that he must do so through the executive process provided in the statute for that purpose.  Rather than acknowledge, as Mr. Dick claims, that the prior sentence for his crime was too harsh and grossly out of proportion to the seriousness of the offenses such that it was nothing more than purposeless and needless infliction of pain and suffering, the opinion expressly affirms the Louisiana Supreme Court's position that the statute pursuant to which Mr. Dick was sentenced was in fact "a valid and final sentence."  To the extent that Mr. Dick's motion merely reurges his original claim that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment with a new, supplemental argument, the argument has herewith been considered.

To the extent that Mr. Dick's motion presents a new claim for habeas relief, he must comply with the one-year limitation period imposed on federal habeas corpus petitioners by the AEDPA.  To do so, he must show that pursuant to Fed. R. Civ. P. 15(c)(2), his supplemental pleading "relates back" to the filing date of the original pleading because both arise out of the same "conduct, transaction, or occurrence."  Maylie v. Felix, 545 U.S. 644, 125 S.Ct. 2562, 2566 (2005).  The Maylie court concluded that to construe Rule 15(c)(2) as requiring, in a federal habeas context, that a newly asserted claim in an amended petition relates back to the original petition for purposes of AEDPA limitations period "so long as the new claim stems from the habeas petitioner's trial, conviction or sentence" would virtually gut the AEDPA statutory limitations period.  Id., at 2571.  It held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  Id., at 2574.  If Mr. Dick's supplemental pleading is a claim that the reinstatement of his original sentence is a violation of the Eighth Amendment because it is cruel and unusual in light of the legislative directive contained in 15:308, the claim arises from a different core of operative facts than his original claim.  As such, his motion to supplement is hereby denied.

differences, between the <u>Henderson</u> case and Mr. Dick's case.  In <u>Henderson</u>, the Eighth Circuit considered the habeas petition of Grover Henderson, who had been sentenced to life imprisonment pursuant to Ark. Code Ann. §5-4-103(a), for the first offense of which he was ever convicted, the delivery of .238 grams of cocaine base.  <u>Henderson</u>, 258 F.3d at 707.  He eventually petitioned for federal habeas corpus relief under 28 U.S.C. § 2254 raising the Eighth Amendment issue that his sentence was cruel and unusual.  <u>Id.</u>   Guided by the proportionality analysis of the United States Supreme Court in <u>Harmelin v. Michigan</u>, 111 S.Ct. 2680 (1991), the Eighth Circuit held that it was.

First, the Eighth Circuit compared the gravity of the offense committed with the harshness of the penalty imposed.  <u>Henderson</u>, at 709.  To evaluate the severity of the crime, that Court considered "the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant."  <u>Id.</u>, *citing* <u>Solem v. Helm</u>, 103 S.Ct. 3001 (1983).  The Court reasoned that although drug crimes generally are considered serious, "it denies reality and contradicts precedent to say that all drug crimes are of equal seriousness and pose the same threat to society."  <u>Id.</u>, (citations omitted).  For instance, in <u>Harmelin</u>, the defendant, whose life sentence without parole passed constitutional muster, possessed 672 grams of pure cocaine with "a potential yield of between 32,500 and 65,000 doses".  <u>Henderson</u>, at 709.  In contrast, Mr. Henderson sold three rocks of crack cocaine, weighing less than one-quarter of a gram, which is less than a hundredth of an ounce.  <u>Id.</u> at 710.

Considering the culpability of the defendant, the Eighth Circuit observed that Mr. Henderson had not initiated the contact with the informant who bought the drugs, did not coerce him into the purchase, nor was there any evidence that he made any effort to sell any more that the small amount for which he was convicted.  <u>Id.</u>  There was no evidence that he had engaged in violence, or had any

-16-

weapons or "trappings" of the drug trade in his possession as did the defendant in the <u>Harmelin</u> case. <u>Id.</u>  Finally, Mr. Henderson had no prior convictions.

In this case, Mr. Dick sold more heroin to the undercover officer than the trace amount of crack sold by Henderson, a total of 15 foils or packets, individual doses of heroin, and five dilaudid pills.  This amount of drugs is still considerably less than the amount of drugs Harmelin possessed and would not have been subject to widespread distribution as in <u>Harmelin</u>.  As in <u>Henderson</u>, the "victim" was an informant or undercover officer, so the Court must look to the harm Mr. Dick's crime threatened to society.  Unlike Henderson, Mr. Dick made three drug sales to Detective Swann, and indicated a willingness to continue to provide him with heroin in the future.  Mr. Dick's willingness to continue to provide drugs to a willing purchaser with whom he had no prior relationship, and the fact that he took his two young daughters with him during the two heroin transactions, including the two trips to New Orleans to purchase the heroin, posed a threat to society. Also unlike Mr. Henderson, Mr. Dick had two prior convictions and one deferred disposition, all of which were over ten years old, and all were related to his personal substance abuse.

Although the sentence imposed on Mr. Dick for his crime is indeed a harsh one, it is one that the legislature saw fit to impose at that time, and in Mr. Dick's case, is not unconstitutionally excessive.  Mr. Dick has not clearly and convincingly shown that he is "exceptional."  *See* <u>Johnson</u>, 709 So.2d at 676. This claim has no merit.

## Claim 2

<u>Petitioner was denied due process and equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution due to insufficient evidence.</u>

At trial, Mr. Dick asserted a defense of entrapment.  He argues that the State presented no

direct or admissible evidence sufficient to sustain his conviction for distribution of heroin.  Mr. Dick argues that the jury's rejection of his defense of entrapment was based solely on Detective Swann's testimony regarding Mr. Dick's alleged propensity to distribute heroin.[3]

In reviewing claims challenging the sufficiency of the evidence, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

Louisiana law provides that when a criminal defendant asserts the affirmative defense of entrapment, the defendant need only prove entrapment by a preponderance of the evidence.  State v. Caldwell, 620 So.2d 859 (La. 1993).  The defense may show that a government agent, in an effort to obtain evidence of a criminal offense, solicits, encourages, or otherwise induced the defendant to engage in conduct constituting an offense when the defendant is not otherwise predisposed to commit such an offense.  State v. Chatman, 599 So.2d 335, 347 (La.App. 2 Cir. 1992).  Upon a defendant's showing, by a preponderance of the evidence, that he was entrapped the State has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the offense charged.  State v. Kerrigan, 671 So.2d 1242 (La. App. 2 Cir. 1992).  In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.  The focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent.  State v. Brand, 520 So.2d 114, 117 (La. 1988).

---

[3]This claim is related to claim 3, that Mr. Dick's counsel was ineffective for failing to object to the detective's "opinion" testimony.

After Detective Swann's testimony regarding the three drug transactions with Mr. Dick, the prosecutor asked Detective Swann whether Mr. Dick, during his conversations with the detective, ever imparted any information regarding drug dealing.  Vol. 4, p. 319.  The detective testified that during a conversation Mr. Dick told the detective that he had "cut several people off", which the detective interpreted as implying that Mr. Dick was dealing only with him, or just a few people.  Vol. 4, p. 319.  He elaborated as follows:

> And in my year's [sic] investigation into narcotics, means at one point he was dealing with several people. .... I don't know what type of narcotics he was dealing, but to me implies that he was dealing for several people.

Id. pp. 319-20.

Mr. Dick admitted that he sold 5 packs of heroin to Detective Swann on May 7, 1999, 10 packs of heroin on May 11, 1999, and dilaudid on June 9, 1999.  On one occasion, he accepted $30.00 in addition to the cost of the heroin, plus $20.00 for gas to go get the drugs in New Orleans.  The jury watched a video tape and heard audio tapes of two drug transactions that Mr. Dick engaged in with Detective Swann. Even though he was initially provoked to provide drugs to the CI, Mr. Dick demonstrated a willingness to continue to provide drugs to Detective Swann, he met his own supplier in "the city", New Orleans, to procure drugs for Detective Swann on two occasions, and was able to quote the prices for the heroin to Detective Swann.  Detective Swann testified that he did not know where Mr. Dick was getting the heroin until he met with him the first time, that Mr. Dick quoted the prices and asked for money for himself, and that when asked, Mr. Dick gave his telephone number to Detective Swann for future transactions.  Vol. 4, pp. 361-63.

Substantial evidence other than Detective Swann's opinion testimony that Mr. Dick's argument highlights supports the jury's rejection of his entrapment defense, and its implicit finding

that Dick was predisposed to engage in the distribution of heroin.  This claim of insufficient evidence is without merit.

### Claim 6

Petitioner's due process right guaranteed by the Fourteenth Amendment of the United States Constitution to a fair trial was violated when the State introduced other crimes evidence.

"The introduction of other crimes evidence involves constitutional problems because of the danger that a defendant may be tried on charges of which he has no notice and for which he is unprepared and which unfairly prejudice him in the eyes of the jury."  State v. Goza, 408 So.2d 1349, 1353 (La. 1982).  The United States Supreme Court has instructed that other crimes evidence causes "unfair prejudice" which can "lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 117 S.Ct. 644, 650 (1997).

However, as discussed in State v. Tate, 593 So.2d 864 (La. App. 2 Cir. 1992):

> If the defendant chooses to pursue the defense of entrapment, evidence of other criminal activity on his part may become relevant in determining whether he had the predisposition to commit the present offense.  State v. Batiste, 363 So.2d 639 (La. 1978).  Guidelines for the introduction of evidence of other criminal activity include a clear demonstration that the defendant will use entrapment as a defense; other crimes must be of a character similar to the offense for which the defendant is on trial; the prior offenses must not be remote in time from the present offense; and whether, even though relevant, evidence should be excluded because the prejudicial effect outweighs the probative value on the issue of predisposition.  State v. Batiste, *supra*.

Id., p. 867.

Mr. Dick claims that his due process right to a fair trial was violated when the State elicited testimony at trial from Detectives Chris Bell and William Hart regarding evidence of other crimes allegedly committed by Mr. Dick.  He argues that Detective Bell testified that the defendant was dealing heroin "about a month and a half before we came in contact with Mr. Dick" (Vol. 4 pp. 386-

388) and that "[w]e knew there was a subject in Lacombe that was dealing heroin", and that the investigation into Mr. Dick's activities began on "[t]he last week of March, first week in April." Vol. 4 p. 389.  Mr. Dick argues that this testimony was inconsistent with Detective Bell's report wherein he wrote that "[o]n 5-7-99 Det. Bell began a narcotics investigation on Wesley Dick, III." Vol. 2 p. 13, State Ex. 5.

Detective Bell testified that the police had been informed in March and April of 1999 that someone in the Lacombe area known as "Weasel" was dealing heroin and dilaudid, but that they were unable to identify that person until May 7, 1999, when Jimmy Forrest, the CI, first identified Wesley Dick as "Weasel".  Vol. 4, pp. 374-75, 377-78.  Once he was identified, an official investigation was opened.  Vol. 4, p. 375.  The testimony that Mr. Dick complains of was elicited from Detective Bell on cross-examination by Mr. Dick's counsel, in an attempt to discredit Detective Bell's earlier testimony that although the official investigation was opened on May 7, 1999, Mr. Dick was actually under investigation several weeks earlier.

Mr. Dick also claims that Detective William Hart testified that Mr. Dick was involved with "the T.J. Jenkins dilaudid enterprise" and that "T.J. Jenkins was a violator that we targeted a couple years ago in Pearl River.  The subject who was selling dilaudid out of his business, around his business."  Vol. 4 p. 363, 365.  The State called Detective Hart on rebuttal, after Mr. Dick's testimony that he had never been involved with selling drugs, that he was only a user, and that his selling drugs to Detective Swann was solely the result of entrapment.  Detective Hart's testimony was allowed over defense counsel's objection, based on the Court's finding that defense counsel had opened the door during its rebuttal cross examination of Detective Hart.  Vol. 4 p. 471, 477.

Mr. Dick argues that the testimony allowed the jury to draw improper inferences even though

the State presented no evidence to prove his actual involvement in drug activities in Lacombe or with T.L. Jenkins, thereby prejudicing his right to a fair trial.  He claims that the jury was confused about the number of times that the defendant made drug transaction with the police because they interrupted their deliberations with questions to the court regarding the number of times drug transactions were made.  Vol. 3 p. 538.

The questions from the jury actually were "How many calls?" and "How many from det.?" Vol. 2 p. 75.  The jury was not questioning the number of drug deals at issue.  Mr. Dick  admitted that he had sold drugs to the CI and Detective Swann, whom he knew as "Chris", on three occasions. Vol. 4 p. 456.

In support of his entrapment defense, Mr. Dick testified that he had never sold drugs (Vol. 4, p. 422), and would never have sold drugs if he had not been hounded by Detective Swann and the CI.  Vol. 4, p. 426.  The State was entitled to explore his credibility regarding his claim that he was not predisposed to deal drugs.  The evidence presented to the jury included audio and video tapes of two of the three meetings at which Mr. Dick admitted to selling drugs to Detective Swann.  He admitted that he "did this for friends", and indicated that he would be willing to continue to supply "Chris" with heroin.  Mr. Dick has shown no unfair prejudice.  This claim has no merit.

### Claims 3, 4, 5, 7 and 8

Petitioner's claims 3, 4, 5, 7 and 8 are ineffective assistance of counsel claims pursuant to the Sixth and Fourteenth Amendments of the United States Constitution.  The standard for reviewing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  As explained by the Supreme Court in Williams v. Taylor, the two part Strickland test is as follows:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, 687, 104 S.Ct. 2025.

To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2025. To establish prejudice he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2025.

Williams, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511-12 (2000).

### *Claim 3*

Denial of effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to object to opinion testimony of undercover agent Kevin Swann.

Mr. Dick first raised this issue on direct appeal. He claims that defense counsel failed to prevent the State from eliciting "non-expert" opinion testimony regarding Mr. Dick's alleged propensity to distribute heroin from Detective Swann by failing to object to such testimony[4]. According to Mr. Dick, the testimony undermined his affirmative defense of entrapment and resulted in his conviction. The particular testimony Mr. Dick objects to was Detective Swann's statement to the jury, "I don't know what type of narcotics he was dealing but to me it implies he was dealing to several people." Vol. 4 pp. 319-320.

The Louisiana First Circuit Court of Appeal observed that this assignment of error was not subject to direct appellate review, and that an evidentiary hearing would be necessary to determine whether the defense counsel's failure to object to the testimony was strategic. State v. Dick, 2001-

---

[4]This claim is related to claim 2, insufficiency of the evidence, discussed *supra.*

0837 (La. App. 1 Cir. 2/15/02), 812 So.2d. 152.

> "[U]nder our adversary system, once a defendant has assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rest with the accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1 Cir. 1993).

Id.

An evidentiary hearing is not necessary. The challenged testimony was given as Detective Swann explained to the jury the video and audio tape of a drug transaction between himself and Mr. Dick. Given the substantial direct evidence amassed against him, Mr. Dick's claim fails to meet the second part of the Strickland test. He cannot show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

### *Claims 4 and 5*

Denial of effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to object to the State's use of peremptory challenges to exclude African-American jurors on the basis of race, and when the trial court granted the State's challenge for cause of an African-American prospective juror.

Mr. Dick, a Caucasian, complains that trial counsel was ineffective for failing to object and seek a mistrial when the prosecutor exercised its peremptory strikes to remove African-Americans from the jury in violation of the principles set forth in Batson v. Kentucky, 106 S.Ct. 1712 (1986). It is well established that Caucasian defendants have third party standing to assert the equal protection rights of the excluded African-American prospective jurors. Powers v. Ohio, 111 S.Ct. 1364 (1991); Campbell v. Louisiana, 118 S.Ct. 1419 (1998); State v. Duncan, 802 So.2d 533, 542 n.5 (La. 2001).

[O]nce the opponent of a peremptory challenge has made out a prima facie case of

racial discrimination the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.  If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination.

Purkett v. Elem, 115 S.Ct. 1769, 1770-71 (1995); Duncan, 802 So.2d at 543.

Mr. Dick claims that prospective jurors Marcell Cousin, Shawn Collins, Cathy Wilson and Tennis Samuel Hatfield were struck because they were African-Americans.  The first three were peremptory strikes; Mr. Hatfield was struck for cause.  Mr. Dick argues that his counsel did not directly object to the three peremptory strikes, but acknowledges that he did express concern regarding a pattern of racial exclusion.  Defense counsel noted on the record, Vol. 4, p. 276, that the State had used two peremptory challenges to excuse Ms. Cousin and Mr. Collins, both African-Americans.  When the State excused Ms. Wilson shortly thereafter, defense counsel again noted on the record without a formal objection that she was also African-American.  Vol. 4, p. 277.  When the State requested and the trial judge agreed that Mr. Hatfield, the next prospective juror, be excused for cause, defense counsel formally objected on the record. Vol. 4 p. 278.

After the jury selection was complete, the prosecutor gave reasons for the three questioned peremptory challenges as follows:  (1) that Ms. Cousin hesitated about whether she could impose the life sentence, and she was a psyche aide and might give more credibility to any psychiatric evidence the defense might put on sometime later in the case; (2) that Mr. Collins stated that he had a number of friends who were doing time for drugs; and (3) that Ms. Wilson's husband was a substance abuse counselor and she might be sympathetic to Mr. Dick's defense that he was merely an addict, not really a dealer, and that her brother was incarcerated on a drug conviction. Vol. 4 pp. 279-280.

Mr. Dick argues that all of these concerns were addressed in the jury charges, and when the

-25-

judge instructed the entire venire panel that the judge, not the jury, decides the sentence, and that they are not to be influenced by sympathy.  He asserts that Ms. Cousin and Ms. Wilson had been "rehabilitated", therefore these strikes were race-based.  However, his argument is merely conjecture, not supported by any evidence of a systematic exclusion of potential jurors based on race.  When it excused Ms. Wilson, the State had used nine of its twelve peremptory challenges. There is nothing in the record indicating whether these three venire persons were the only African-Americans the State peremptorily excused, or whether it also used peremptory challenges to excuse Caucasian venire persons, or whether any African-Americans were ultimately selected for the jury. The State articulated on the record credible race-neutral reasons for the peremptory challenge of each one.  Mr. Dick has not met his *prima facie* burden.

Mr. Dick also argues that his appellate counsel was ineffective for failure to appeal the trial court's grant of the State's challenge of Mr. Hatfield for cause.  He argues that removal of Mr. Hatfield for cause was done in order to save a peremptory challenge to be used on another African-American venire person.  At that time, the State had three peremptory challenges left.  When questioned by the prosecutor, Mr. Hatfield stated that he would have a problem returning a verdict of guilty knowing that the defendant would be sentenced to life imprisonment.  Vol. 2 p. 246.  Mr. Dick argues that Mr. Hatfield was rehabilitated because the trial judge instructed the venire persons that she, not the jury, would sentence the defendant if he were to be found guilty.  However, the prosecutor also informed the venire persons that the legislature had mandated a life sentence for the crime with which Mr. Dick was charged.  Vol. 2 p. 244.  Mr. Dick's fifth claim has no merit.

### *Claims 7 and 8*

Petitioner's Sixth Amendment right to the effective assistance of counsel and his right to present a defense was violated by counsel's failure to call the police

<u>informant as a witness for impeachment purposes and to show interest and his motive
for setting up the defendant due to his trouble with the law, and when counsel failed
to obtain records of the various clinics where he received treatment for drug
addiction.</u>

Mr. Dick complains that his trial counsel was ineffective because he failed to call Jimmy Forrest, the CI who set him up, in order to impeach the credibility of the police officers who testified for the State.  Mr. Dick further argues that Mr. Forrest would have testified regarding the number of calls he and Detective Swann made to Mr. Dick, impeaching the detective's testimony which, according to Mr. Dick, suggested that they made only four calls to him in order to persuade him to provide drugs to them.  Finally, Mr. Dick argues that his trial counsel was ineffective for failing to investigate his history of substance abuse treatments attempting to cure his drug addiction, or to obtain the records from those facilities to show that he had not used drugs prior to his arrest.

Mr. Forrest's self interest and motive in cooperating with law enforcement to set Mr. Dick up would not have impeached the credibility of the testifying officers in light of the video and audio evidence of Mr. Dick's apparent willingness to procure and provide heroin and dilaudid for the CI and "Chris".  The jurors heard Mr. Dick's testimony as to the persistent and repeated telephone calls he received, and his initial unwillingness to provide drugs to the CI and "Chris".  Given the direct evidence of the drug transactions offered at trial, Mr. Dick cannot show that absent these alleged errors, the outcome of the trial would have been any different.  These claims are without merit.

### RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that Wesley Dick's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. §2254 be **DENIED WITH PREJUDICE** as without merit.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation **within ten (10)days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 31st day of October, 2007.


_____
LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE